Filed 4/8/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SAN DIEGO DEPARTMENT OF CHILD SUPPORT SERVICES, <br><br> Appellant, <br><br> v. <br><br> C.P., <br><br> Respondent. | D073403 <br><br><br> (Super. Ct. No. DF242973) |

APPEAL from an order of the Superior Court of San Diego County, Terrie E. Roberts, Commissioner.  Reversed and remanded with directions.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys General, for Appellant.

No appearance for Respondent.

In January 2013, the family court ordered respondent C.P. to pay monthly child support.  From September 12, 2013, through August 22, 2017, C.P. was incarcerated in federal prison.  Less than a month after his release, C.P. promptly filed a request for the

court to adjust the child support arrears that accrued during his incarceration—which the parties and the family court handled under *current* Family Code[1] section 4007.5. (Stats. 2015, ch. 629, § 2, eff. Oct. 8, 2015; subsequent references to *current* § 4007.5 are to this section of the legislation.)  The court granted C.P.'s request over the objection of appellant San Diego County Department of Child Support Services (Department) (§ 17406), which is the appellant and is represented by the Attorney General in this appeal (§ 17407).[2]

The family court erred as a matter of law in granting C.P.'s request.  Given the unambiguous language in current section 4007.5 and the timing of C.P.'s child support order, incarceration, and request for adjustment of arrears, the statutory relief awarded is unavailable to C.P. under current section 4007.5.  As we explain, subdivision (f) expressly provides that the statute applies *only* to child support orders issued on or after October 8, 2015, and C.P.'s child support order under consideration was issued in January 2013.  As we further explain, contrary to the family court's stated reasons, at the time of

---

[1]     Further undesignated statutory references are to the Family Code.

[2]     "In all actions involving . . . support, . . . the local child support agency and the Attorney General represent the public interest in establishing, modifying, and enforcing support obligations."  (§ 17406, subd. (a).)  The Attorney General tells us that the Department "is the local child support agency (LCSA) in San Diego County tasked with . . . establishing, enforcing, and modifying child support" in cases of "children born out of wedlock."  (See § 17400, subd. (a), quoted in fn. 4, *post*.)
        "If the Attorney General is of the opinion that a support order or support-related order is erroneous and presents a question of law warranting an appeal, . . . in the public interest the Attorney General may:  [¶]  (1) Perfect . . . an appeal to the proper appellate court if the order was issued by a court of this state. . . ."  (§ 17407, subd. (a).)

the repeal of *former* section 4007.5 (Stats. 2010, ch. 495, § 1; subsequent references to *former* § 4007.5 are to this section of the legislation), C.P. did not have a vested statutory right to have his support order adjusted, and *current* section 4007.5 does not contain a saving clause pursuant to which *former* section 4007.5 could have provided statutory protection for incarcerated child support obligors like C.P.[3]

However, C.P.'s request can be read to have sought the adjustment in child support arrears under *former* section 4007.5, which was repealed as of July 1, 2015 (*id.*, subd. (i)); but the parties did not brief and the trial court did not consider whether *former* section 4007.5 contains a saving clause that provides C.P. with a statutory basis on which to have obtained the requested relief.

Accordingly, we will reverse the order granting C.P.'s request and remand with directions to consider, as appropriate based on briefing to be requested, whether *former* section 4007.5 includes a saving clause that allows its application to C.P.'s request and, if so, whether C.P. has made a sufficient showing for the relief he seeks.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2013, at the request of the Department (§§ 17400,[4] 17406 (see fn. 2, *ante*)), the family court filed a section 17430 Judgment Regarding Parental

---

[3]    " 'A saving clause is generally used in a repealing act to preserve rights and claims that would otherwise be lost.' "  (*Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.* (2009) 176 Cal.App.4th 1597, 1608 (*Beverly Hilton Hotel*), quoting *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1284.)

[4]    "(a) Each county shall maintain a local child support agency . . . that shall have the responsibility for promptly and effectively establishing, modifying, and enforcing child

Obligations (Judgment) that required C.P. to pay monthly child support of $308. C.P. was incarcerated out of state from September 12, 2013, until August 22, 2017, during which time he did not have the ability to pay support.

During C.P.'s incarceration, the Department requested and in May 2016 received from the family court an order temporarily modifying C.P.'s monthly child support obligation to $0 as of April 1, 2016. Although the Department's motion is not in the record on appeal, the Attorney General tells us that the Department did not know of, and thus did not base its request on, C.P.'s incarceration; rather, the Department sought the child support modification order solely "because [the Department] had not received any payments [from C.P.] for more than 12 months."

Within weeks of being released from prison, in September 2017 C.P. filed a "Request for Adjustment of Child Support Arrears Due to Incarceration or Involuntary Institutionalization" (Request). C.P. presented his Request on Judicial Council form FL-676—a mandatory form that is required for use under *current* section 4007.5. (See current § 4007.5, subd. (g) ["The Department of Child Support Services shall, by January 1, 2016, and in consultation with the Judicial Council, develop forms to implement this section."].) In his Request, C.P. sought the adjustment of his child support arrears based on the following showing: C.P. was incarcerated for more than 90

support obligations . . . . The local child support agency shall take appropriate action . . . to establish, modify, and enforce child support . . . . [¶] (b)(1) . . . [A]ttorneys employed within the local child support agency may direct, control, and prosecute civil actions and proceedings in the name of the county in support of child support activities of the Department of Child Support Services and the local child support agency. . . ." (§ 17400.)

4

consecutive days during the time period from September 12, 2013, through August 22, 2017; C.P. did not have the financial ability to pay child support during this time period; C.P.'s incarceration did not result from a conviction for failure to pay child support or for domestic violence against the supported person or the child; and "[the] child support order was made or changed on or after October 8, 2015."

The Department opposed C.P.'s Request. The Department argued as follows: Because *current* section 4007.5 applies only to child support orders issued or modified on or after October 8, 2015, the current May 2016 order suspending support was the only order at issue; and since, under the May 2016 order, ongoing monthly child support was set at $0, there are no "account balances" (i.e., arrears) to adjust under the order.[5]

The family court heard oral argument in October 2017. The court granted C.P.'s Request and adjusted child support to $0 for the time of C.P.'s incarceration, resulting in no arrears for the time period from September 12, 2013, through March 31, 2016. At the hearing, the court orally explained that obligors like C.P. who were incarcerated at the time *former* section 4007.5 was repealed did not lose their "vested rights" by failing to seek relief prior to the repeal. On the following grounds, the court also ruled that *current* section 4007.5 contains an implied saving clause, extending the protections of *former* section 4007.5: The "entire purpose" of the current legislation is "to continue protecting the people who are incarcerated from having arrears accrued against them while they are

---

5    Prior to its argument, the Department noted that the previous support order contained in the January 2013 Judgment was not implicated by C.P.'s Request.

5

incarcerated and clearly don't have the ability to pay"; and the Legislature enacted current section 4007.5 as urgency legislation "to immediately get this relief back in place."

The Department timely appealed from the October 2017 order granting C.P.'s Request.[6]

## II.  DISCUSSION[7]

As we explain, because, by its express terms, current section 4007.5 does not apply to C.P.'s Request, the family court erred in granting relief.  As we further explain, at the time of the repeal of former section 4007.5, C.P. did not have a vested right to the statutory relief he sought, and the Legislature did not include a saving clause when it enacted current section 4007.5.  However, as we finally explain, because C.P.'s Request can be read to seek the adjustment in child support arrears under *former* section 4007.5, and because the parties have not briefed and the family court has not considered whether former section 4007.5 contains a saving clause, the family court should determine this issue in the first instance on remand.

---

[6]     Thus, the only child support obligation at issue in this appeal is the October 2017 *adjustment to C.P.'s arrears*, not the May 2016 modification of C.P.'s monthly support obligation to $0.

[7]     C.P. has not participated in the appeal.  Where, as here, there is no respondent's brief, we "decide the appeal on the record, the opening brief, and any oral argument by the appellant."  (Cal. Rules of Court, rule 8.220(a)(2).)  We do not consider the failure to file a respondent's brief as an admission of error.  To the contrary, the Department (as appellant) has the burden of establishing reversible error, and we review the Department's presentation—here, an opening brief, a clerk's transcript, and a reporter's transcript—and determine whether the Department met its burden.  (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419, fn. 2.)

A.    *Law*

This case presents a pure question of statutory interpretation, which is subject to independent review.  (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633.)

" ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' "  (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856-857.)  In particular, we " ' " 'giv[e] significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' "  (*Ibid.*)

Under the Family Code, "child support" refers to "a support obligation owing on behalf of a child" and "includes maintenance and education" as well as "past due support or arrearage when it exists."  (§ 150.)  Whereas court-ordered child support may *terminate* upon the happening of any of a number of contingencies (§ 4007, subd. (a)), there are also situations in which the obligation to pay child support is temporarily *stayed* (Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2018) ¶¶ 6:740 to 6:745, pp. 6-414 to 6-417).  At issue in the present appeal is one of these

7

latter situations—i.e., where, upon an appropriate showing, a child support obligation may be stayed temporarily during the obligor's incarceration.

Current section 4007.5 applies *only* to child support orders "issued or modified" on or after October 8, 2015.  (§ 4007.5, subd. (f).[8])  Any party, as well as a LCSA, may petition the family court to determine the amount of child support or arrears following an authorized suspension of support under subdivision (a).[9]  (§ 4007.5, subd. (d).)

B.    *Analysis*

1.    *Current Section 4007.5 Does Not Apply to C.P.'s Request*

By its express terms, current section 4007.5 applies only to child support orders "issued or modified on or after" October 8, 2015.  (§ 4007.5, subd. (f); see fn. 8, *ante*.)

The original child support order is contained in the Judgment filed in January 2013—more than two and a half years before the potential application of current section 4007.5.  Although the family court (temporarily) modified monthly child support to $0 in May 2016—i.e., at a time when current section 4007.5 was in force and, thus,

---

[8]    Actually, section 4007.5, subdivision (f) provides that section 4007.5 applies to child support orders issued or modified "on or after the enactment of this section."  In this regard, the Legislature filed the bill with the Secretary of State on October 8, 2015, along with the following statement from the Legislature:  "This act is an urgency statute . . . and *shall go into immediate effect*."  (Stats. 2015, ch. 629, § 3, italics added.)

[9]    Alternatively, although inapplicable here, a LCSA may, according to specified statutory conditions, administratively adjust account balances for any child support order suspended under section 4007.5, subdivision (a).  (§ 4007.5, subd. (c)(1).)  If either the support obligor or obligee objects, however, the LCSA may not adjust the order; instead, the agency must obtain court approval to adjust the arrears.  (§ 4007.5, subd. (c)(2).)

8

potentially applicable—C.P. did not accrue any arrears after that date, since his monthly support obligation had become $0.

By its plain meaning, therefore, current section 4007.5 does not apply to the January 2013 Judgment, and C.P. did not accrue any arrears under the May 2016 modification order. Thus, current section 4007.5—the statute under which the parties and the family court proceeded—does not authorize the relief C.P. sought and the family court granted.

2.      *The Family Court Erred*

At the hearing on C.P.'s Request, the family court explained: Despite the express language in *former* subdivision (i) repealing *former* section 4007.5, obligors like C.P. who were incarcerated at the time former section 4007.5 was repealed did not lose their "vested rights" by failing to seek relief prior to its repeal; and, in any event, *current* section 4007.5 contains an implied saving clause, extending the benefits of *former* section 4007.5. The court's stated reasons included the following: "I just don't believe that . . ." when "the Legislature let [former section 4007.5] expire, . . . it also took away vested rights already obtained by someone who had those rights based on the prior law, who was still incarcerated"; "The entire purpose of the legislation [(current § 4007.5)] was done to continue protecting the people who are incarcerated from having arrears accrue against them while they are incarcerated and . . . don't have the ability to pay"; in passing current section 4007.5, the Legislature "was acting with an urgency . . . to immediately get this relief back in place"; and, finally, current section 4007.5 "not only . . . included [former section 4007.5], but . . . expanded it."

9

In so ruling, the family court erred. More than a century ago, our Supreme Court explained: "[W]here a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause." (*Napa State Hospital v. Flaherty* (1901) 134 Cal. 315, 317.) As we discuss, neither situation is present here; C.P. did not have any vested rights at the time of former section 4007.5's repeal, and current section 4007.5 does not contain an express or implied saving clause.

A statutory right (like that available under former § 4007.5) becomes vested—and, thus, protected in the event the statute is repealed—only if the right is converted into a final judgment before the repeal. (*Governing Board v. Mann* (1977) 18 Cal.3d 819, 822 (*Mann*).) Thus, a party in litigation may acquire a vested right *only* "when the award is final and any appeals have been concluded by a final judgment." (*Beverly Hilton Hotel*, *supra*, 176 Cal.App.4th at p. 1606; accord, *Mann*, *supra*, 18 Cal.3d at p. 822 [" ' 'If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal." ' "].) In the present case, at the time of the repeal of the statute under which C.P. sought relief, there was no final judgment suspending C.P.'s child support obligation or adjusting C.P.'s arrears: C.P. filed his Request on September 2017, which is *more than two years after the repeal of the statute that provided the right he was seeking to enforce*. Accordingly, C.P. had not acquired a vested right under former section 4007.5 by the time of its repeal

on July 1, 2015 (*Mann*, *supra*, 18 Cal.3d at p. 822; *Beverly Hilton Hotel*, *supra*, 176 Cal.App.4th at pp. 1606-1607); and the family court erred in ruling otherwise.

Independent of a vested right, when the Legislature repeals a statute but intends to provide statutory benefits after the repeal, the Legislature may include a saving clause either in the repealing act or in other legislation at the session of the Legislature effecting the repeal.  (*Beverly Hilton Hotel*, *supra*, 176 Cal.App.4th at pp. 1607-1608 [court considered repealing legislation]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 110 [court considered "contemporaneous legislation"].)  A saving clause may be express or implied.  (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048-1049 [an express saving clause is not necessary, because courts have no authority to dictate the form of the expression of legislative intent].)  At a minimum, for a saving clause to be effective, the Legislature must "demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it."  (*Pedro T.*, at p. 1049.)  Here, the family court suggested that, when enacting *current* section 4007.5, the Legislature intended to save *former* section 4007.5; however, such a possibility is not supported by the legislation containing current section 4007.5 or by the history surrounding its enactment.[10]

Initially, there is no *express* or *implied* clause saving former section 4007.5 in the legislation enacting current section 4007.5.  (Stats. 2015, ch. 629.)  Moreover, on at least

---

10    Consideration of a saving clause in the legislation enacting *current* section 4007.5 is appropriate, because it contains an express repeal of former section 4007.5. (Stats. 2015, ch. 629, § 1 ["Section 4007.5 of the Family Code is repealed."]).

three bases, the Legislature communicated an intent *not* to save the statutory protections previously provided by former section 4007.5.

First, in the legislation enacting current section 4007.5, the Legislature expressly included the repeal of former section 4007.5 (Stats. 2015, ch. 629, § 1), which was arguably unnecessary in light of the sunset provision contained in former section 4007.5 (*id.*, subd. (i)).[11]

Second, we are persuaded by the Legislature's explanation of the "urgency" that necessitated the determination that current section 4007.5 "go into immediate effect": "In order to *limit the duration of the interruption in the protections provided by former Section 4007.5* of the Family Code, it is necessary that this bill take effect immediately." (Stats. 2015, ch. 629, § 3, italics added.)  By this statement, the Legislature affirmatively acknowledged that, between the repeal of former section 4007.5 and the enactment of current section 4007.5, potentially affected parties necessarily would experience an "interruption" in the statutory protections.[12]

Third, consistent with former section 4007.5, subdivision (g), early versions of the bill that became current section 4007.5 expressly applied to "child support orders and

---

[11]    Since, as we explain at part II.C., *post* , we do not reach the issue whether *former* section 4007.5's contains a saving clause, we express no opinion as to the potential effect of the express repeal of former section 4007.5 contained in the legislation enacting current section 4007.5.

[12]    Given this explanation in the enacting legislation of current section 4007.5 (Stats. 2015, ch. 629, § 3), the family court's disbelief that "the Legislature would intend that . . . people incarcerated after July 1, 2015, lost these very substantive rights" is unfounded.

12

modifications *issued on or after July 1, 2011*." (Assem. Bill No. 610 (2015-2016 Reg. Sess.) Feb. 24, 2015, § 2, italics added; Assem. Amend. to Assem. Bill No. 610 (2015-2016 Reg. Sess.) Apr. 8, 2015, § 2, italics added.[13]) However, the Legislature ultimately amended those versions of the bill to apply only to child support orders "issued or modified on or after" October 8, 2015. (§ 4007.5, subd. (f); see fn. 8, *ante*.)

In summary, since the Legislature could have included a saving clause in current section 4007.5 but did not, and instead expressly repealed former section 4007.5 while recognizing an interruption in the statutory protections previously afforded by former section 4007.5, the only intent we, as a reviewing court, can discern is that, in enacting current section 4007.5, the Legislature intended *to discontinue*, not *to save*, rights under former section 4007.5.

C.    *Conclusion*

While the family court's ruling, including the stated reasons, was compassionate, it was nonetheless erroneous on the record before the court. At the time the Legislature repealed former section 4007.5, C.P. did not have a vested statutory right, and in enacting current section 4007.5, the Legislature did not intend to save the statutory protections previously available under former section 4007.5.

That said, C.P.'s Request, even though presented on a form intended for use under current section 4007.5, sufficiently put at issue a claim for an adjustment of arrears under

---

[13]    Notably, both of these versions of the bill were proposed months before the July 1, 2015 date of repeal contained in former section 4007.5, subdivision (i). This reconfirms that, had the Legislature wanted to save former section 4007.5 in current section 4007.5, the Legislature had the knowledge how and the ability to do so.

former section 4007.5.[14]  Indeed, the family court ruled, albeit incorrectly, that C.P. had a vested right under former section 4007.5.  What the family court did not consider, however, is whether *former* section 4007.5, as opposed to *current* section 4007.5, contained a saving clause that would allow C.P. the relief he sought in his Request.  More specifically, the family court did not consider whether former section 4007.5's "sunset provision" constituted an implied saving clause that affected C.P.'s Request for an adjustment of child support arrears.  (See *In re Pedro T., supra,* 8 Cal.4th at pp. 1044-1052 [sunset provision of earlier statute subject to a three-year legislative experiment *implied* an intent to apply the statute to all convictions prior to date of repeal, even though they were not final prior to the sunset date].)

Accordingly, the family court should determine in the first instance, following proceedings at which the parties may present their views, whether former section 4007.5—under subdivision (i)'s sunset provision, or otherwise—contained a saving clause; and, if so, whether C.P. is entitled to the relief he sought in his Request.

---

14  Most likely, this would not be the case for other applicants seeking relief under former section 4007.5.  The Judicial Council preprinted form for use under section 4007.5 contains the affirmative statement:  "My child support order was made or changed on or after October 8, 2015."  Such a representation is consistent with and required by *current* section 4007.5.  (*Id.*, subd. (f); see fn. 8, *ante*.)  In C.P.'s case, use of this form was both accurate and proper because of the May 2016 modification order—even though the arrears C.P. sought to be adjusted accrued under the January 2013 Judgment.  If, ultimately, there is a determination that former section 4007.5 contains a saving clause that allows application of the former statute to child support obligations after the date of the former statute's repeal, most applicants will be unable to use the current Judicial Council form FL-676 (rev. Jan. 1, 2017)—in which event, they may either cross out the preprinted representation regarding the date of the child support order (currently found at ¶ 4.c.) or draft their own case-specific application.

14

Having not reached those issues in this appeal, we express no opinion as to the arguments that might be presented or the rulings that will follow.

### III.    DISPOSITION

The family court's October 24, 2017 order granting C.P.'s Request is reversed. On remand, the family court is directed to enter an order denying the Request under *current* section 4007.5, and to determine whether *former* section 4007.5 contained a saving clause such that the former statute applies to C.P.'s Request. If former section 4007.5 does not apply to C.P.'s Request on this basis, then the court shall deny the Request; if former section 4007.5 does apply to C.P.'s Request on this basis, then the court shall reconsider C.P.'s Request on its merits and determine whether C.P. made a sufficient showing for relief under former section 4007.5. Because C.P. did not appear in this appeal, the Department shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

IRION, J.

WE CONCUR:


BENKE, Acting P. J.


DATO, J.

15